IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF TEXAS

TYLER DIVISION

| | | |
|---|---|---|
| DEBRA ELLEN COHEN | § | |
| v. | § | CIVIL ACTION NO. 6:11cv650 |
| UNIVERSITY OF TEXAS HEALTH SCIENCE CENTER AT TYLER | § | |

MEMORANDUM OPINION AND ORDER
ON MOTION FOR SUMMARY JUDGMENT

The above-styled lawsuit was filed on December 5, 2011. The case was transferred to the undersigned on May 24, 2012 with the consent of the parties in accordance with 28 U.S.C. § 636. Defendant filed a Motion for Summary Judgment (document #37), which is the subject of this Memorandum Opinion and Order.

*Background*

Plaintiff filed an Amended Complaint on January 11, 2012, asserting a claim pursuant to the Americans With Disabilities Act of 1990, 42 U.S.C. §§ 12101, *et seq*., including as amended by the ADA Amendments Act of 2008, and a claim pursuant to § 504 of the Rehabilitation Act of 1973. Defendant filed a motion seeking dismissal of Plaintiff's ADA claim for want of subject matter jurisdiction. The motion was granted on October 31, 2012.

In this case, Plaintiff alleges that her former employer, University of Texas Health Science Center, Tyler ("UTHSC-T"), failed to accommodate her actual disability of rheumatoid arthritis,

discriminated against her by demoting her and discharging her and retaliated against her for seeking accommodation. Plaintiff states in the Amended Complaint that she was employed by UTHSC-T in 2010, and that she suffered from rheumatoid arthritis. Plaintiff submits that she requested accommodation in May 2010, in the form of voice recognition software to alleviate the need for her to type as much. According to Plaintiff, her accommodation was denied and she was demoted in June 2010. Her employment was terminated in August 2010.

UTHSC-T filed a Motion for Summary Judgment (document #37). UTHSC-T asserts that Plaintiff's employment was terminated as a result of a reduction in force and that, even if her job had not been eliminated, Plaintiff could not perform the essential functions of her job. UTHSC-T denies that any reasonable accommodation was denied for Plaintiff's rheumatoid arthritis. On the contrary, UTHSC-T argues that it initiated attempts to assist Plaintiff and accommodate her injuries when she returned to work following a car accident, but Plaintiff refused assistance and stated that she did not want to be considered disabled.

The summary judgment evidence submitted by UTHSC-T shows that Plaintiff was hired in August 2009 as a Clinical Data Specialist in the Center for Clinical Research ("CCR"). Her direct supervisor was Laurie Macleod. Plaintiff's duties included learning and using a clinical trial management program called StudyManager. StudyManager was a program that was intended to allow existing systems to communicate with each other, which would alleviate the need to extract data from one system and manually enter it into another. Plaintiff identified problems with the StudyManager program that made it unsuitable for its intended purpose. A similar program referred to as Velos was also considered. Ultimately, Ms. Macleod made a decision to not pursue use of StudyManager or Velos as a result of problems with utilizing the programs and budgetary

constraints. The contract with StudyManager was not renewed and the CCR chose not to proceed with Velos. This occurred approximately six months into Plaintiff's employment. Working on a clinical trial management system was the primary focus of Plaintiff's duties and provided the bulk of her work. Once the decision was made not to use StudyManager or Velos, Ms. Macleod did not have enough work for Plaintiff. Plaintiff's remaining duties included data entry, technical support and website building.

Ms. Macleod took FMLA leave in late February 2010. When she returned in March 2010, other staff members complained to her about Plaintiff's attitude and behavior. Ms. Macleod counseled Plaintiff concerning her behavior. Plaintiff told Macleod that she had been in a car accident, that she could no longer drive and that she would need surgery on both of her hands. Plaintiff explained to Macleod that she was in a great deal of pain and had limited use of her hands. Her recovery from surgery was expected to be at least 4 months. Plaintiff was not eligible for FMLA leave, however, because she had not been employed for 12 months yet, and she had not accrued very much sick leave as a result of the short tenure of her employment. When the issue of disability benefits were discussed, Plaintiff stated that she did not intend to seek disability and that she could perform her job. An adaptive keyboard was purchased for Plaintiff and the Director of Rehab evaluated Plaintiff's workstation and offered suggestions to Plaintiff.

Plaintiff had surgery on her right hand on March 31, 2010 and returned to work on April 5, 2010. Plaintiff did not have a note from her doctor releasing her to work. Plaintiff acknowledged being in pain and taking pain medication. She worked a half-day and was told by Ms. Macleod to bring a work release from her doctor when she returned. On April 6, 2010, Plaintiff returned to work for another half-day and exhibited indications that she was still in pain. She did not bring a work

release from her doctor. Ms. Macleod determined that Plaintiff was not ready to return to work, as she could not accomplish normal tasks such as opening doors, opening drinks or typing. Plaintiff was told not to return until she had a work release from her doctor. That same day, Ms. Macleod reviewed Plaintiff's 6-month evaluation with her. The evaluation commends Plaintiff's work on the clinical trial management system, but also notes Ms. Macleod's concerns relating to Plaintiff's interpersonal skills. Plaintiff again appeared for work on April 7, 2010, and was told to stay home until she obtained a work release from her doctor.

Plaintiff obtained a note from her doctor stating that she could return to work for 4-hour days beginning on April 14, 2010, and that she could return to 8-hour days on April 19, 2010. Plaintiff's restrictions imposed until May 10, 2010 included restrictions on physical activities, lifting, computer use and typing. On April 23, 2010, Plaintiff requested voice recognition software. Ms. Macleod sent the request to Georgia Melton, Director of Human Resources and the ADA coordinator, for review. During this same time period, Ms. Macleod became concerned about Plaintiff's lack of productivity, performance on assigned tasks and lack of attention to security issues. Plaintiff was instructed, for example, that her husband could not be in secure office areas with her after hours. Ms. Macleod and Ms. Melton met with Plaintiff on May 4, 2010 and gave Plaintiff a form for permanent ADA accommodations to be completed by her doctor. According to Ms. Macleod, Plaintiff insisted that her limitations were only temporary and that she did not want to be labeled "disabled." On May 11, 2010, Ms. Macleod and Ms. Melton met with Plaintiff again to discuss Plaintiff's failure to turn in the ADA accommodation form or a release to work full duty. Plaintiff was told that she either needed to turn in the completed form or she would be expected to perform all duties without accommodation.

On May 19, 2010, Plaintiff provided a note from her doctor requesting accommodations and/or restrictions until August 10, 2010. At that same time, Ms. Macleod informed Plaintiff that the IT department concluded that voice recognition software could not be ordered for her because of cost and because it would not interface with all of the required programs. According to Ms. Macleod, Plaintiff stated that she no longer required it. Ms. Macleod identifies multiple occurrences after that when Plaintiff did not carry out assigned tasks and/or could not complete tasks for which she had been trained. At a meeting on June 1, 2010, Ms. Macleod told Ms. Melton that there was not enough work to keep Plaintiff busy since the clinical trial management programs had been abandoned. Plaintiff was notified about a potential part-time position in the IT department set to be available later that month. On June 23, 2010, Plaintiff began her new position. The position was only temporary and was deleted effective August 3, 2010. Plaintiff was told that her position was being eliminated by Kimberly Griffin in Human Resources.

### *Summary Judgment Standard*

Rule 56(a) of the FED. R. CIV. P. provides that the Court may only grant a motion for summary judgment when there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. The party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553 (1986). The moving party, however, "need not negate the elements of the nonmovant's case." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). The movant's burden is only to point out the absence of

evidence supporting the nonmoving party's case. *Stults v. Conoco, Inc.*, 76 F.3d 651, 655 (5th Cir. 1996). Once, the moving party makes a properly supported motion for summary judgment, the nonmoving party must look beyond the pleadings and designate specific facts in the record showing that there is a genuine issue for trial. *Id.* Neither "conclusory allegations" nor "unsubstantiated assertions" will satisfy the nonmovant's burden. *Id.*

Summary judgment is inappropriate if the evidence before the court, viewed as a whole, could lead to different factual findings and conclusions. *Honore v. Douglas*, 833 F.2d 565 (5th Cir. 1987). The district court must look to the full record, including the pleadings, affidavits, and depositions. *Williams v. Adams*, 836 F.2d 958, 961 (5th Cir. 1988). Under this standard, fact questions are considered with deference to the nonmovant. *Reid v. State Farm Mutual Automobile Insurance Co.,* 784 F.2d 577, 578 (5th Cir.1986). The evidence of the nonmovant is to be believed and all inferences are to be drawn in his favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 (1986). The Court resolves factual controversies for purposes of summary judgment in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts. *Little v. Liquid Air Corp.*, 37 F.3d at 1075. The Court does not, however, in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts. *Wallace v. Texas Tech University*, 80 F.3d 1042, 1048 (5th Cir. 1996) (citing *Little v. Liquid Air Corp*, 37 F.3d at 1075).

An issue is "genuine" if the evidence supporting its resolution in favor of the party opposing summary judgment, together with any inference in such party's favor that the evidence allows, would be sufficient to support a verdict in favor of the party. *St. Amant v. Benoit*, 806 F.2d 1294, 1297 (5th

Cir. 1987). A "material fact" is one that might affect the outcome of the suit under governing law. *Anderson v. Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. at 2510.

## *Discussion and Analysis*

Plaintiff's claims brought pursuant to the ADA were previously dismissed on October 31, 2012, leaving her claims seeking relief pursuant to § 504 of the Rehabilitation Act, 29 U.S.C. § 794. Section 504 of the Rehabilitation Act prohibits disability discrimination by recipients of federal funding. Similar to the ADA, § 504 provides that no qualified individual with a disability, "shall solely by reason of her or his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Section 504 and the ADA are generally interpreted *in pari materia*, meaning they are construed together. *Frame v. City of Arlington*, 657 F.3d 215, 223 (5th Cir.2011). The analysis applicable to an ADA claim is used when considering a claim brought pursuant to § 504. *Pinkerton v. Spellings*, 529 F.3d 513, 516-17 (5th Cir.2008). Section 504(d) expressly states that "[t]he standards used to determine whether this section has been violated in a complaint alleging employment discrimination under this section shall be the standards applied under title I of the [ADA]."

One significant distinguishing factor, however, is that § 504 requires a plaintiff to show that she was discriminated against *solely* because of her disability. 29 U.S.C. § 794(a). Unlike the ADA, liability under § 504 cannot be established by showing that disability was a motivating factor; disability must be shown to be the sole cause for the adverse employment decision at issue. *Soledad v. U.S. Dep't of Treasury*, 304 F.3d 500, 505 (5th Cir.2002). A plaintiff must show that she has a disability, that she is qualified for the job, that she was employed in a program or activity that

receives federal funding and that she suffered an adverse employment decision solely because of her disability. *Hileman v. City of Dallas*, 115 F.3d 352, 353 (5th Cir.1997); *see also, Handy v. Brownlee*, 118 Fed.Appx. 850, 854 (5th Cir.2004); *Pinkerton v. Spellings*, 529 F.3d at 517-19.

Discrimination claims may be shown by direct evidence or circumstantial evidence. In this case, Plaintiff does not present any direct evidence of discrimination. Instead, Plaintiff relies upon circumstantial evidence to support her assertion that she was discriminated against because of a disability. Courts look to the well known *McDonnell Douglas*[1] framework when considering discrimination cases founded upon circumstantial evidence. *Atkinson v. Denton Publishing Company*, 84 F.3d 144, 148 (5th Cir.1996). Under the *McDonnell Douglas* framework, the plaintiff initially bears the burden of establishing a prima facie case by a preponderance of the evidence. *Rhodes v. Guiberson Oil Tools*, 75 F.3d 989, 992 (5th Cir.1996)(*en banc*).

Defendant contends that Plaintiff cannot establish a prima facie case of discrimination because she cannot show that she was disabled or that she could perform the essential functions of her job with or without a reasonable accommodation. Defendant points to Plaintiff's assertions during her employment that she was not disabled and did not want to be perceived as disabled, as well as her alleged performance problems. In response, Plaintiff argues that the ADA Amendments Act of 2008 broadened the definition of "disability" and that Plaintiff's rheumatoid arthritis meets the definition of an ADA disability.

Because it does not change the outcome in this case, for purposes of this summary judgment analysis, the Court assumes, *arguendo*, that Plaintiff can establish a prima facie case of discrimination or point to genuine issues of material fact on the issues of her disability and her status

---

[1] *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817 (1973).

as a qualified individual. Once a plaintiff establishes a prima facie case of discrimination, the burden shifts to the employer to "articulate a legitimate, non-discriminatory reason for firing" the employee. *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir.2011). If the employer articulates a legitimate, non-discriminatory reason for the challenged employment decision, the plaintiff must be given an opportunity to rebut the employer's purported explanation and show that the reason given is merely pretextual. *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 378-79 (5th Cir.2010). The issue on summary judgment is whether the plaintiff "has shown that there is a genuine issue of material fact as to whether this reason was pretextual." *Id*. Pretext may be shown either through evidence of disparate treatment or that the employer's proffered explanation is false or unworthy of credence. *Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir.2010).

In this case, UTHSC-T asserts that there are legitimate, non-discriminatory reasons for the termination of Plaintiff's employment. UTHSC-T submits that Plaintiff's position was eliminated due to a reduction in force and that Plaintiff then accepted a part-time, temporary position that later expired. A reduction in force "is itself a legitimate, nondiscriminatory reason for discharge." *EEOC v. Tex. Instruments, Inc.*, 100 F.3d 1173, 1181 (5th Cir.1996). The defendant having articulated a legitimate, non-discriminatory reason for Plaintiff's discharge, the burden then shifts to Plaintiff to show that UTHSC-T's proffered reason is pretext for discrimination. *Pinkerton*, 529 F.3d at 519.

In an attempt to show pretext, Plaintiff argues that there is no evidence that her position was eliminated. Plaintiff disputes the use of the term "reduction in force" because when asked whether the position held by Plaintiff "remained empty," Ms. Macleod, during her deposition, responded "yes." Plaintiff also submits that the HR director knew about her rheumatoid arthritis and had a hostile attitude towards her, and that she was a good employee with a great evaluation. Plaintiff has

not disputed that the clinical trial management software was a significant portion of her job duties, that her employer stopped using the clinical trial management software, or that she was not replaced.

The ultimate burden of persuading the court that she was a victim of intentional discrimination always remains on the plaintiff. *Armstrong v. City of Dallas,* 997 F.2d 62, 65 (5th Cir.1993). "On summary judgment, in this third step, the plaintiff must substantiate [her] claim of pretext through evidence demonstrating that discrimination lay at the heart of the employer's decision." *Price v. Federal Express Corp.*, 283 F.3d 715, 720 (5th Cir.2002). For summary judgment purposes, the core issue is whether a genuine issue of material fact exists as to whether the defendant intentionally discriminated against the plaintiff. *LaPierre v. Benson Nissan, Inc.*, 86 F.3d 444 (5th Cir.1996); *Armstrong*, 997 F.2d at 65.

Here, Plaintiff has not met her burden of producing sufficient evidence from which a reasonable trier of fact could conclude that the proffered reason is unworthy of credence. Plaintiff has not shown a genuine issue of material fact concerning whether the proffered non-discriminatory reason for the adverse employment action was a pretext for disability discrimination.

Plaintiff additionally alleges that she was retaliated against after requesting voice recognition software. To establish a prima facie case of retaliation under the Rehabilitation Act, a plaintiff must show that: (1) she engaged in a protected activity, such as the filing of an EEO complaint; (2) her employer took an adverse employment action against her; and (3) a causal connection existed between the adverse employment action and the protected activity. *Calderon v. Potter*, 113 Fed.Appx. 586, 592 (5th Cir.2004). The same burden-shifting analysis applies, such that once a plaintiff establishes a prima facie case of retaliation, the burden shifts to the defendant to show that it had a legitimate, non-discriminatory reason for taking the adverse employment action. *Id.* (*citing*

*Gee v. Principi*, 289 F.3d 342, 345 (5th Cir.2002)). If the defendant successfully articulates a legitimate, non-discriminatory reason for the adverse employment action, the plaintiff then must show that the adverse employment action would not have occurred "but for" the protected activity. *Id.* (*citing Long v. Eastfield Coll.*, 88 F.3d 300, 308 (5th Cir.1996)).

Plaintiff has not shown that her request for voice recognition software is a protected activity. Moreover, as set forth above, the summary judgment evidence does not show that the termination of Plaintiff's employment would not have occurred but for her request for voice recognition software. She does not contradict Defendant's evidence that the clinical trial management software was a significant portion of her job duties, that her employer stopped using the clinical trial management software, or that she was not replaced. Plaintiff additionally does not contradict UTHSC-T's summary judgment evidence that the IT department concluded that the requested voice recognition software would not be compatible with all of the software programs used in Plaintiff's job. Plaintiff has not presented evidence sufficient to create a question of material fact as to whether a causal connection existed between a protected activity and an adverse employment action or that the decision to deny her request was the result of intentional discrimination.

Based upon the foregoing discussion and analysis, the undersigned finds that there are no genuine issues of material fact precluding summary judgment. Defendant is entitled to judgment as a matter of law and the motion for summary judgment should be granted dismissing the complaint. It is accordingly

**ORDERED** that Defendant's Motion for Summary Judgment (document #37) is **GRANTED**. It is further

**ORDERED** that the above-styled lawsuit is **DISMISSED** with prejudice. It is further

**ORDERED** that the Final Pretrial Conference scheduled for April 1, 2013, and the Jury Selection and Trial scheduled for April 2, 2013 are **CANCELED**. It is finally

**ORDERED** that any motion not previously ruled on is **DENIED**.

So **ORDERED** and **SIGNED** this **25** day of **March, 2013.**

_____
JUDITH K. GUTHRIE
UNITED STATES MAGISTRATE JUDGE